UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

In re

**JASON WAYNE HENRY**,

Debtor.

Case No. **11-60118-13**

# MEMORANDUM OF DECISION

At Butte in said District this 13th day of April, 2011.

After due notice, the Court held a hearing in this Chapter 13 case on March 11, 2011, on the Debtor's "Motion for Turnover of Property and Immediate Order Preventing Creditor from Selling or Otherwise Disposing of Property" filed on February 10, 2011 (Docket No. 18), and objection thereto filed by Lithia Chrysler Jeep Dodge of Great Falls ("Lithia"), from which Debtor purchased a 2006 Chevrolet Trailblazer prior to filing his Chapter 13 petition under a Retail Installment Contract and Security Agreement. The parties appeared represented by counsel. Testimony of witnesses was heard and Exhibits ("Ex.") 1, 2, 3, 4, and 5 were admitted by stipulation. At the conclusion of the parties' cases-in-chief the Court granted Lithia time to file a reply brief, which has been filed and reviewed by the Court together with the record and applicable law. This matter is ready for decision. For the reasons set forth below Lithia's objection is overruled, Debtor's Motion for Turnover is granted, and Lithia shall turn over immediately to the Debtor the 2006 Chevrolet Trailblazer, VIN 1GNET13H462199045.

Debtor Jason Wayne Henry (hereinafter "Debtor" or "Henry") appeared at the hearing and testified, represented by attorney Kraig Kazda of Great Falls. Lithia was represented by attorney Elizabeth A. Ries-Simpson of Missoula, Montana. Lithia's finance manager Deidre Newman ("Newman") and its general manager Brian Belderrain ("Belderrain") testified.

This Court has jurisdiction of this Chapter 13 case under 28 U.S.C. § 1334(a). Debtor's Motion for Turnover of property of the estate is a core proceeding under 28 U.S.C. § 157(b)(2)(E). This Memorandum includes the Court's findings of fact and conclusions of law.

## FACTS

On January 21, 2011[1], Henry entered into a "Retail Installment Contract and Security Agreement (Ex. 1) with Lithia for the sale and purchase of the 2006 Chevrolet Trailblazer for a total sales price of $31,178.88. Ex. 1 sets forth a payment schedule beginning 2/20/2011 calling for 72 payments in the amount of $433.04. Ex. 1 also provides: "Security. You are giving us a security interest in the Property purchased." Below that is a provision for "Conditional Delivery" which states: "A Conditional Delivery Agreement is being signed along with this Contract. The Conditional Delivery Agreement is incorporated by references into this Contract, and a copy of the Conditional Delivery Agreement is attached to this Contract." However, the box next to "Conditional Delivery" is not checked. Newman testified that it was an oversight that she neglected to check the box under "Conditional Delivery" on Ex. 1.

Under the heading "Assignment" the box is marked "xx" indicating that the assignment is made "under the terms of a separate agreement made between the Seller and Assignee." The

---

[1] Newman testified that Lithia required Henry to bring in proof of income, and he returned the next day on January 21, 2011, which was a very busy day, when they completed Ex. 1 and 2.

second page[2] of Ex. 1 near the bottom provides in pertinent part: "Payment. You promise to pay us the principal amount of $20,219.00" and later states "You agree to pay this Contract according to the payment schedule and late charge provisions shown in the Truth-in-Lending Disclosures." Ex. 1 is signed by Henry, and by Newman on behalf of Lithia.

Newman testified that Henry had obtained preapproval of financing from AmeriCredit for the purchase of the 2006 Chevrolet TrailBlazer. She testified that AmeriCredit is one of many of the lenders which Lithia uses, and that Lithia does not finance vehicle purchases by itself. Under cross examination Newman answered "No" when asked if Lithia has the ability to do in-house financing. She testified that Lithia does not want to finance vehicle sales, but rather wants to arrange for separate financing and then move on.

Newman testified that she tried to contact AmeriCredit about insurance for the vehicle but was not able to reach it, so she went ahead and prepared the paperwork Ex. 1 and 2 on January 21, 2011.

Ex. 2 is the "Delivery Agreement" dated January 21, 2011, and was signed by Henry and Newman for Lithia. Ex. 2 includes the following "Financing" provision which provides in pertinent part:

> Customer acknowledges that it may take some time for Seller to verify the credit of Customer(s) and/or assign the retail installment contract/lease agreement. In consideration of Seller agreeing to deliver the vehicle, Customer agrees that if Seller is unable to assign the retail installment contract/lease agreement to any one of the financial institutions with whom Seller regularly does business pursuant to terms of assignment acceptable to Seller, Seller may elect to rescind the retail installment contract/lease agreement. In the event Seller elects to rescind the retail installment contract/lease agreement, Customer will return the vehicle to

---

[2]The top line of Ex. 1 lists its first page as page 4 of 11, and lists the second page as 5 of 11.

3

Seller immediately upon request.

Customer understands that he/she may obtain his/her own financing. ****

Henry testified that, at the time he entered into Ex. 1 and 2, he told Lithia's sales manager of his intention to file a bankruptcy petition. Newman and Belderrain testified that they had no knowledge of Henry's intention to file bankruptcy, but Lithia did not offer any evidence to controvert Henry's testimony that he told the sales manager.

Henry took possession of the Chevrolet Trailblazer on January 21, 2011, but he testified that he has not received the title to the vehicle. Newman testified that Lithia does not transfer title to vehicles until financing is completed. She testified that she typically tells buyers that they can obtain 40-day temporary license plates, and that after the bank verifies their income they can usually register their vehicle at the department of motor vehicles within two weeks.

Henry testified that he received a telephone call from Lithia regarding an insurance issue, and that he would have to sign a new purchase agreement. Ex. C is a "Rescission and Substitution Agreement signed by Debtor and Newman on behalf of Lithia, dated January 23, 2011. Ex. 3 states that the parties agree:

> The Previous Contract/Lease Agreement and the sale of the vehicle is rescinded and cancelled and that neither party shall have any rights, remedies or liabilities under the Previous Contract/Lease Agreement.
>
> The Buyer and Seller agree to the sale of the vehicle described above on the terms and conditions as set forth in the retail installment contract or lease agreement attached to this agreement ("Replacement Contract/Lease Agreement"). This Replacement Contract/Lease Agreement shall be and is substituted in place of the Previous Contract/Lease Agreement.

Ex. 4 is the second "Retail Installment Contract and Security Agreement" dated January 23, 2011, between Debtor and Lithia, again signed by Newman. Newman testified that

4

everything on Ex. 4 is the same as Ex. 1 except for the $595 cost of insurance omitted from Ex. 4.  Ex. 4 reduces the total sale price of the 2006 Chevrolet Trailblazer to $30,260.88.  The monthly payment is reduced to $420.29.  Directly below the payment Ex. 4 provides, like Ex. 1: "Security.  You are giving us a security interest in the Property purchased."  Like Ex. 1, the provision on Ex. 4 marked "Conditional Delivery" does not have the box checked which would incorporate the Delivery Agreement.  Henry testified that he did not sign a new Delivery Agreement after Ex. 2 was rescinded.  Newman testified that there was no need for another Delivery Agreement because Henry already took possession of the vehicle on January 21, 2011, and the VIN number had not changed.  On redirect examination Newman testified that it was still Lithia's intention to incorporate the provisions of the Delivery Agreement into Ex. 4.

Unlike Ex. 1, under the heading "Assignment" Ex. 4 provides that the "Contract and Security Agreement is assigned to" AmeriCredit.  Under the heading "Sales Agreement" Ex. 4 provides, as does Ex. 1, that "[y]ou promise to pay us" but the amount is reduced to $19,624.00.  Newman testified that the pre-approval by AmeriCredit was still in effect on January 23, 2011.

Henry filed his Chapter 13 petition on January 26, 2011.  The Notice of commencement of this case was mailed out to creditors beginning electronically on January 26, 2011.  The Notice (Dkt. 4) informs creditors of their rights, deadlines, and informs the creditors that they "May Not Take Certain Actions" including: "If you attempt to collect a debt or take other action in violation of the Bankruptcy Code, you may be penalized."  On the back page the Notice gives additional explanations, including: "Common examples of prohibited actions include contacting the debtor by telephone, . . ., taking actions to collect money or obtain property from the debtor, repossessing the debtor's property ...."

5

Newman testified that because of the volume of Lithia's car sales, she did not send Henry's paperwork to AmeriCredit until January 27, 2011. Henry testified that Lithia telephoned him on January 28, 2011, and demanded that he surrender the vehicle because the financing did not go through. Newman testified that on January 28, 2011, she noticed on her computer that the Henry sale was on hold. She contacted AmeriCredit and she was told that Henry had filed for bankruptcy. She testified that she approached her general manager Belderrain and he tried to salvage the deal.

Belderrain testified that he told Newman to call AmeriCredit and ask for an exception. He mirrored Newman's testimony that Lithia does not finance vehicle sales itself, but just sells vehicles. When he was unable to get an exception, he testified that he had the sales manager call Henry and ask him to return the vehicle. Belderrain testified that he was aware of Henry's bankruptcy case when he told the sales manager to call.

After Lithia called him Henry attempted to reach his bankruptcy attorney but could not reach him. Belderrain testified that Henry surrendered the Trailblazer to Lithia on January 28, 2011, within twenty minutes after Lithia called him.

Ex. 5 is AmeriCredit's denial of Henry's financing. Ex. 5 is dated "02/04/2011"[3] and states: "We are sorry to inform you that we are unable to fund your contract for the following reasons: Bankruptcy stip not met." On examination by the Court, Belderrain testified that the guidelines state that a debtor in chapter 7 or chapter 13 must obtain a discharge before being eligible for approval.

---

[3] The date of Ex. 5 predates the transaction by almost three weeks. No explanation has been given by Lithia of the discrepancy

6

Henry testified that he was prepared to pay under the installment agreement in February of 2011, but that Lithia told him it would not accept his payments. Henry filed his Chapter 13 Plan, then filed an amended Plan (Dkt. 14) on February 9, 2011. The amended Plan lists Lithia near the top of the second page as a creditor with an unimpaired secured claim which is not provided for in the Plan and shall receive no payments through the Trustee, and lists the 2006 Chevy Trailblazer as Lithia's collateral. Paragraph 3 lists no executory contracts or leases which are to be rejected, and then provides that: "All other executory contracts and unexpired leases shall be affirmed."

Debtor filed his instant Motion for Turnover based on 11 U.S.C. § 362(a)(3) and 11 U.S.C. § 542(a) seeking return of the vehicle and arguing that Lithia's refusal to turn the Trailblazer over is a violation of the automatic stay under 362(a)(3). Lithia filed a response contending that the vehicle is not property of the estate because a contract was never formed and ownership was never transferred to the Debtor because the financing was not approved, which was a condition precedent under the Montana Supreme Court decision *Thompson v. Lithia Chrysler Jeep Dodge of Great Falls, et al.*, 2008 MT 175, 343 Mont. 392, 185 P.3d 332. Lithia admits that it uses a new Delivery Agreement form than the one construed in *Thompson*, but argues that the addition of the term "rescind" in Ex. 2 does not change the intent and effect of the failure to obtain financing, i.e., "no financing means no contract." Lithia contends that it was entitled to demand return of the vehicle because Henry never owed it and the estate did not obtain possession when he filed his petition. Lastly Lithia argues that ordering it to turn over the vehicle would be giving the Debtor a free vehicle because Lithia never had a lien against the title. Debtor replies that the contract language in *Thompson* is materially different than the language in

Ex. 2, and that by requiring the Rescission and Substitution Agreement, Ex. 3, Lithia rescinded Ex. 2 and did not incorporate a new Delivery Agreement.

## DISCUSSION

Section 541(a) of the Bankruptcy Code defines "[p]roperty of the estate" to include "all the following property, wherever located and by whomever held:"

> (1) . . . all legal or equitable interests of the debtor in property as of the commencement of the case. (emphasis added).

Generally, courts must examine state law to determine property interests because:

> [S]tate law determines the extent of [a party's] interests [in property] and when these interests expire. *In re Contractors Equip. Supply Co.*, 861 F.2d 241, 244 (9th Cir. 1988); *In re Farmers Markets, Inc.*, 792 F.2d 1400, 1402 (9th Cir. 1986). "State law, however, must be applied in a manner consistent with federal bankruptcy law." *In re Sierra Steel, Inc.*, 96 B.R. 271, 273 (9th Cir. BAP 1989) (citing *In re North Am. Coin & Currency, Ltd.*, 767 F.2d 1573, 1575 (9th Cir. 1985), *amended,* 774 F.2d 1390 (9th Cir. 1985), *cert. denied sub nom. Daniel A. Torres, M.D., P.C. v. Eastlick*, 475 U.S. 1083 (1986)).
>
> 14 Mont. B.R. at 141-42.
>
> Furthermore, "The bankruptcy estate succeeds to no more interest than the Debtor possessed or had, and the estate takes its interest subject to such conditions." *In re Kleffner*, 14 Mont. B.R. 10, 15 (Bankr. Mont. 1994) (quoting *In re Baquet*, 61 B.R. 495, 497-98 (Bankr. Mont. 1986)).

*In re Weatherwax*, 16 Mont. BR 304, 308-09 (Bankr. D. Mont. 1997). *See also Nobelman v. American Savings Bank*, 508 U.S. 324, 329 (1993) ("In the absence of a controlling federal rule, we generally assume that Congress has 'left the determination of property rights in the assets of a bankrupt's estate to state law,' since such '[p]roperty interests are created and defined by state law.' *Butner v. United States*, 440 U.S. 48, 54-55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). *See also Barnhill v. Johnson*, 503 U.S. 393, 398, 112 S.Ct. 1386, 1389, 118 L.Ed.2d 39

(1992).")."). As recently recognized in *In re Crowson*, 431 B.R. 484, 489 (10th Cir. BAP 2010), "[o]nce that state law determination is made . . . [courts] must [then] look to federal bankruptcy law to resolve the extent to which that interest is property of the estate."

Under this broad definition of property of the estate under § 541(a), there is no question that, as of the commencement of the case on January 26, 2011, the estate included Henry's interest in the 2006 Chevrolet Trailblazer he purchased under the Retail Installment Contract and Security Agreement, Ex. 4, which was signed by Henry and Lithia. Lithia's argument that granting Debtor's Motion for Turnover would in essence give the Debtor a free vehicle because it did not perfect its lien is unsupported by the record. The "property of the estate" shown by the evidence in the record is not an unencumbered ownership interest in the 2006 Chevrolet TrailBlazer, but rather is the Debtor's interest in Ex. 4, and subject to the terms and conditions provided therein. Further, Ex. 4 specifically provides: "You are giving us a security interest in the Property purchased."

Debtor has expressed his intention in his Plan (Dkt. 14) to affirm all executory contracts, including Ex. 4[4]. Section 1322(b)(3) and (b)(7), respectively, authorize a debtor under a plan to cure any default or provide for the assumption of any executory contract. Section 365(d)(2) authorizes a trustee to assume an executory contract of personal property "at any time before the confirmation of a plan ...." The requirements to assume under that section are subject to the requirements of § 365(a).

Lithia's argument that the vehicle did not become property of the estate because of post-

---

[4]Lithia will not be heard to object to its treatment as an unimpaired secured creditor under the Plan when Debtor testified that Lithia refused his tender of payment.

9

petition developments ignores the specific language of § 541(a) that the estate is comprised of all of the Debtor's interests "as of the commencement of the case." The evidence show that, on the petition date, AmeriCredit had pre-approved Henry's financing, and AmeriCredit did not issue its refusal, Ex. 5, until two days later. Thus, the Debtor's rights and interests under Ex. 4, including his right to possession of the subject vehicle, became property of the estate under § 541(a) as of the commencement of the case.

      Section 542(a) provides that an entity in possession, custody, or control, during the case, "of property that the trustee may use, sell, or lease under section 363 . . . shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate." The Debtor has rights and powers of a trustee under 11 U.S.C. § 363 pursuant to 11 U.S.C. § 1303, and therefore is entitled to turnover of the 2006 Chevrolet Trailblazer under § 542(a).

      Additional statutory authority for the Debtor to remain in possession of the vehicle is provided in 11 U.S.C. § 1306(b) which provides that: "Except as provided in a confirmed plan or order confirming a plan, the debtor shall remain in possession of all property of the estate." As yet there is no confirmed plan or order confirming plan in this case, so § 1306(b) requires that the Debtor remain in possession of the vehicle purchased in Ex. 4. The phone call by Lithia's sales manager to Henry after the petition date violated § 1306(b)'s requirement that the Debtor remain in possession of the subject vehicle and all rights and interests under Ex. 4.

      With respect to Lithia's arguments that no contract existed because AmeriCredit rejected the Debtor's financing, citing *Thompson*, the Court declines to grant Lithia relief based on any of its arguments. A proceeding to determine the validity, priority, or extent of a lien or other

10

interest in property, other than a proceeding under Rule 4003(d), is an adversary proceeding governed by Part VII of the Federal Rules of Bankruptcy Procedure. F.R.B.P. 7001(2). In this case Lithia telephoned the Debtor after the petition date and demanded that he surrender the vehicle, and Lithia remains in possession of the vehicle and has declared the Debtor's interest in the contract void based on post-petition developments. This Court declines to consider the merits of Lithia's arguments because it has failed to follow proper procedure.

As discussed below Lithia violated the stay by calling the Debtor and demanding that he surrender the vehicle purchased under Ex. 4. Lithia failed to initiate an adversary proceeding, failed to file a motion to modify the stay or a motion to annul the stay, and failed to pay applicable filing fees in order to present its arguments to the Court in an orderly, procedurally proper manner. The Court declines to consider Lithia's arguments on the merits on procedural grounds, but also on policy grounds, because to consider Lithia's arguments on the merits would be to encourage violations of procedural rules and violations of the automatic stay. Those who fail to follow the rules can expect summary denial.

The Debtor's filing of his Chapter 13 bankruptcy petition on January 26, 2011, gave rise to an "automatic stay". 11 U.S.C. § 362(a). The Ninth Circuit construed the automatic stay in *In re Gruntz*, 202 F.3d 1074, 1081-82 (9th Cir. 2000):

> The automatic stay is self-executing, effective upon the filing of the bankruptcy petition. *See* 11 U.S.C. § 362(a); *The Minoco Group of Companies v. First State Underwriters Agency of New England Reinsurance Corp.* (*In re The Minoco Group of Companies*), 799 F.2d 517, 520 (9th Cir.1986). The automatic stay sweeps broadly, enjoining the commencement or continuation of any judicial, administrative, or other proceedings against the debtor, enforcement of prior judgments, perfection of liens, and "any act to collect, assess or recover a claim against the debtor that arose before the commencement of the case." 11 U.S.C. § 362(a)(6).

The Ninth Circuit has repeatedly reiterated the broad scope of the automatic stay as "one of the most important protections in bankruptcy law." *See In re Risner*, 317 B.R. 830, 835 (Bankr. D. Idaho 2004), quoting *Eskanos & Adler, P.C. v. Leetien*, 309 F.3d 1210, 1214-15 (9th Cir. 2002); *Hillis Motors, Inc. v. Hawaii Auto Dealers' Assoc.*, 997 F.2d 581, 585 (9th Cir. 1993).

It cannot be reasonably argued in the instant case that Lithia's claim against the Debtor did not arise before the commencement of the case. Ex. 1, 2, and 4 all are dated before the petition date. Belderrain and Newman both testified that they knew Henry had filed a bankruptcy case from AmeriCredit. Belderrain did not call an attorney to request relief from the stay, but instead told his sales manager to call Henry and demand return of the vehicle. *In re Cinematronics, Inc.*, 111 B.R. 892, 900 (Bankr. S.D. Cal. 1990), the court wrote:

> The creditor takes a calculated risk where it undertakes to make its own determination of what the stay means. *In re Gray*, 97 B.R. 930, 936 (Bankr. N.D. Ill. 1989). To disagree with Theodore Roosevelt, at least when the automatic stay is concerned, it is far better to be a "timid soul" who seeks a court determination of the limits of the stay, rather than to fail "while daring greatly".

Actions taken in violation of the automatic stay are void, not merely voidable. *In re Wardrobe*, 559 F.3d 932, (9th Cir. 2009), citing *Gruntz*, 202 F.3d at 1081 (other citations omitted). At footnote 5 *Risner* quotes *Eskanos v. Adler* that: "Consistent with the plain and unambiguous meaning of the statute, and consonant with Congressional intent, we hold that § 362(a)(1) imposes an affirmative duty to discontinue post-petition collection actions." 317 F.3d at 835 n.5, quoting *Eskanos v. Adler*, 309 F.3d at 1215. The Ninth Circuit was even more explicit in *Eskanos v. Adler* in the context of the instant case when it wrote: "[W]e have held that the automatic stay requires an immediate freeze of the status quo by precluding and nullifying post-petition actions." 309 F.3d at 1214, citing *Hillis Motors*, 997 F.2d at 885.

The evidence admitted at the hearing in this case shows that Lithia contacted the Debtor after the petition date and demanded return of the vehicle. Debtor's voluntary return of the vehicle does not obviate the fact that Lithia's phone call to the Debtor violated the stay, and is void. *Wardrobe*, 559 F.3d at 934. Given that violation of the stay, which continues so long as Lithia remains in possession of the Trailblazer, Lithia can expect no relief from this Court against Debtor's Motion for Turnover.

The automatic stay requires that post-petition actions which violate the stay be nullified. *Eskanos v. Adler*, 309 F.3d at 1214, citing *Hillis Motors*. Court have emphasized the obligation of creditors to take affirmative action to terminate or undo any action that violates the automatic stay. *In re Johnston*, 321 B.R. 262, 283-84 (D. Ariz. 2005) (citing cases). The Ninth Circuit affirmed this holding in *Sternberg v. Johnston*, 595 F.3d 937, 945 (9th Cir. 2010): "To comply with his 'affirmative duty' under the automatic stay, Sternberg needed to do what he could to relieve the violation." Likewise in the instant case Lithia needs to do what it can to undo its violation of the stay when it contacted the Debtor and demanded return of the vehicle. Lithia must turn over the 2006 Chevrolet Trailblazer to the Debtor.

Lithia objects that the Debtor no longer has an interest in the vehicle because AmeriCredit refused financing, and "no financing means no contract" due to the failure of a condition precedent to the formation of the contract under the Montana Supreme Court case *Thompson v. Lithia Chrysler Jeep Dodge of Great Falls*, 2008 MT 175, 185 P.2d 332. Because of Lithia's failure to follow proper procedure, as discussed above this Court will not decide the merits of Lithia's arguments unless and until Lithia complies with procedural requirements. The Court will set forth the applicable contractual language from *Thompson*:

> If this transaction is to be a retail installment sale, then this order is not a binding

13

> contract to the dealer and dealer shall not be obligated to sell until approval of the terms hereof is given by a bank or finance company willing to purchase a retail installment contract between the parties hereto based on such terms. If this approval is obtained, however, this order is a binding contract. If the purchaser is obtaining his own financing, this order is a binding contract as it is written. If a purchaser has received a copy of a retail installment contract as part of this transaction, it shall not be binding to the dealer until accepted by the bank or finance company to which it will be assigned.

*Thompson*, 2008 MT 175, ¶ 25, 343 Mont. at 401-02, ¶ 25, 185 P.3d at 339, ¶ 25.

The Montana Supreme Court decided *Thompson* based on the plain language of that particular contract. *Id.* Lithia admits that Ex. 2 is a new Delivery Agreement, but contends, without citation to authority, that addition of the term "rescind" does not change the intent and effect of Henry's failure to obtain financing. The new language from Ex. 2, which was expressly rescinded by Ex. 3 and not substituted with a new Delivery Agreement, states:

> Customer acknowledges that it may take some time for Seller to verify the credit of Customer(s) and/or assign the retail installment contract/lease agreement. In consideration of Seller agreeing to deliver the vehicle, Customer agrees that if Seller is unable to assign the retail installment contract/lease agreement to any one of the financial institutions with whom Seller regularly does business pursuant to terms of assignment acceptable to Seller, Seller may elect to rescind the retail installment contract/lease agreement. In the event Seller elects to rescind the retail installment contract/lease agreement, Customer will return the vehicle to Seller immediately upon request.

The contract language from *Thompson* that "this order is not a binding contract to the dealer and dealer shall not be obligated to sell until approval of the terms hereof is given by a bank or finance company willing to purchase a retail installment contract between the parties" is not present in Ex. 2. Instead Lithia as the Seller "may elect to rescind." Ex. 2. Lithia did not elect to rescind as of the commencement of the case. Therefore, at first glance it appears to this Court that Lithia has an uphill climb to prove its argument that the clauses are functionally equivalent, but that determination is not before the Court in a procedurally proper manner.

Lithia's other arguments are not persuasive. Lithia suggests that granting Debtor's Motion for Turnover will in essence give the Debtor a free vehicle. That argument is not supported by Debtor's treatment of Lithia as an unimpaired secured creditor in his Plan (Dkt. 14). As discussed above the property of the estate is the Debtor's interest in Ex. 4, and subject to its terms. Ex. 4 plainly states "You are giving us a security interest in the Property purchased." Lithia does not explain how the Debtor or Trustee can assume Ex. 4 without complying with those terms.

The Court is not persuaded by the testimony of Lithia's managers that it does not provide financing itself. Ex. 4 states: "You promise to pay us . . . ." The fact that Lithia opted to assign Ex. 4 to AmeriCredit does not change that plain language. The Court notes that Ex. 4 includes the following under the heading "Signatures": "Entire agreement. Your and our entire agreement is contained in this Contract. There are no unwritten agreements regarding this Contract. Any change to this Contract must be in writing and signed by you and us." The Montana Supreme Court cited a similar provision in support of its decision in *Thompson*, 2008 MT at ¶ 29, 343 Mont. at 403, ¶ 29, 185 P.3d at 340, ¶ 29. The testimony of Newman and Belderrain that Lithia does not finance its own sales is inconsistent with the plain language of its own Ex. 4 in which it states that the buyer promises "to pay us." Lithia has pointed to no legal proscription against its acceptance of payments for vehicles which it sells as a commercial enterprise.

Next, the Court observes that Newman testified that AmeriCredit is but one source of financing that it uses, but Lithia did not even attempt to obtain financing for the subject sale from a different lender after AmeriCredit's rejection. Finally, given that Lithia bases its arguments on the language of Ex. 2, even though rescinded, Ex. 2 plainly states: "Customer understands that he/she may obtain his/her own financing." Lithia cannot pick and choose parts of Ex. 2 without providing Henry with the chance to obtain other financing.

In sum, as of the commencement of this case on January 26, 2011, Lithia had already rescinded Ex. 2, but had not elected to rescind Ex. 4 before the automatic stay came into place. As of the commencement of the case Lithia's actions against the Debtor's interest in the subject vehicle under Ex. 4 were subject to the automatic stay. The Court concludes that the Debtor has satisfied his burden of proof to grant relief under §§ 542(a) and 362(a).

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of this Chapter 13 case under 28 U.S.C. § 1334(a). Debtor's Motion for Turnover of property of the estate is a core proceeding under 28 U.S.C. § 157(b)(2)(E).

2. This Court has jurisdiction of this Chapter 13 case under 28 U.S.C. § 1334(a). Debtor's Motion for Turnover of property of the estate is a core proceeding under 28 U.S.C. § 157(b)(2)(E).

3. Lithia's telephone call to the Debtor after the date of the filing of the petition asking for return of the 2006 Chevrolet Trailblazer is void as a violation of the stay. The Debtor's interest in the subject vehicle under the provisions of Ex. 4 was property of the estate under 11 U.S.C. § 541(a)(1) as of the commencement of the case.

4. Lithia failed to follow proper procedure to determine the validity, priority or extent of the parties' respective interests in the 2006 Chevrolet Trailblazer purchased under Ex. 4, under F.R.B.P. Rule 7001(2). Lithia failed to file a motion to modify or annul the automatic stay under 11 U.S.C. § 362(d), and failed to pay applicable fees.

5. Debtor satisfied his burden of proof under 11 U.S.C. § 542(a) for turnover of property.

**IT IS ORDERED** a separate Order shall be entered in conformity with the above

overruling Lithia's objections, granting Debtor's Motion for Turnover filed on February 10, 2011 (Dkt. 18), and ordering Lithia to turn over immediately to the Debtor the 2006 Chevrolet Trailblazer, VIN 1GNET13H462199045.

BY THE COURT

*Ralph B Kirscher*
HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana